Harold Raymond HOOKS,
Plaintiff-Appellee,

v.

Louie L. WAINWRIGHT, etc.,
Defendant-Appellant.

Harold Raymond HOOKS, et al.,
Plaintiffs-Appellees,

v.

Louie L. WAINWRIGHT, etc.,
Defendant-Appellant.

No. 84–3756.

United States Court of Appeals,
Eleventh Circuit.

Nov. 12, 1985.

Mitchell D. Franks, Chief Trial Counsel, Walter M. Meginniss, Asst. Atty. Gen., Dept. of Legal Affairs, Civil Div., Tallahassee, Fla., for defendant-appellant.

James W. Clute, U.S. Dept. of Justice, Civil Rights Div., Washington, D.C., Richard A. Belz, Fla. Institutional Legal Services, Inc., Gainesville, Fla., Peter M. Siegel, Florida Justice Institute, Inc., Miami, Fla., Charles H. Livingston, Sarasota, Fla., for plaintiffs-appellees.

Before RONEY and FAY, Circuit Judges, and DUMBAULD *, District Judge.

RONEY, Circuit Judge:

This appeal presents a single issue certified by the district court for interlocutory appeal pursuant to 28 U.S.C.A. § 1292(b). The district court held that *any* acceptable plan for ensuring Florida prisoners meaningful access to the courts as required by *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), *must* include a provision for the assistance of counsel. The decision was made after extensive litigation, detailed in an appendix to this decision, and reflected in a thorough opinion. *Hooks v. Wainwright*, 536 F.Supp. 1330, 1355 (M.D.Fla.1982). The district court there resolved what it considered to be "the

* Honorable Edward Dumbauld, U.S. District Judge for the Western District of Pennsylvania,   sitting by designation.

controlling constitutional question remaining in this cause, a question that has served as a roadblock to effective settlement negotiation for several years." *Id.* at 1353. It ordered that a plan be submitted which would incorporate a provision for assistance of counsel.[1] The district court stayed its order and certified it for interlocutory appeal pursuant to section 1292(b), in order to resolve this controlling question of law. It concluded that final resolution of that issue by this Court and, "perhaps, the Supreme Court, would materially advance the ultimate termination of this already protracted litigation." *Id.* at 1353. A preliminary injunction entered in 1977 remains in effect until an acceptable plan has been finally approved by the courts.

Because we hold that a state plan is not required to include a provision for attorney assistance to prisoners for the filing of collateral suits challenging either the legality of their confinement or the legality of the conditions of their confinement, we reverse.

The seminal Supreme Court case upon which the plaintiffs make their claim and the district court based its decision is *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). There the Court held that inmates' right to "meaningful access" to the courts required states to provide them with adequate law libraries *or* adequate assistance from persons trained in the law. *Id.* at 828, 97 S.Ct. at 1498. Both the district court and the plaintiffs focus on the rhetoric of the *Bounds* opinion, not its holding. The holding of *Bounds* supports the State's position in this case because the Court there rejected the argument made by the plaintiffs here. This is made particularly clear in the Court of Appeals decision which the Supreme Court affirmed in *Bounds.* The history of the litigation is reflected in the Fourth Circuit's opinion. *Smith v. Bounds,* 538 F.2d 541 (4th Cir.1975). The district court had granted summary judgment for the plaintiffs on the claim that prisoners were being denied reasonable access to the courts in violation of their constitutional rights. It ordered the state officials to submit a proposed plan to remedy the violation. The plaintiffs objected to the State's suggested plan for prison legal research facilities because of the omission of any legal defender program as a supplement to the library facilities proposed under the plan. The district court had the parties submit briefs on the precise question that is now before this Court: whether an independent attorney's office, supplementary to the library facilities, was necessary to satisfy proper constitutional standards. After full consideration, the district court in *Bounds* refused

---

1. Although the district court did not attempt to formulate the precise details of a plan, it made the following observations:

    1. Any acceptable plan must ensure meaningful access to the courts on behalf of *all* persons who are presently or who will hereafter be committed to the custody of the Florida Department of Corrections.
    2. Attorney-assistance can be constitutionally limited, under *Bounds,* to the preparation and filing of actions challenging the legality of a prisoner's confinement (Fla.R.Crim.P. 3.850 proceedings and state and federal habeas corpus proceedings) and the legality of the conditions of a prisoner's confinement (federal civil rights proceedings).
    3. The attorney-assistance program should be structured so that the attorneys, although funded by the state of Florida, would be able to function independently, free from the conflict of interest problems testified to with regard to the program operated by the Texas Department of Corrections.

    4. Defendant should give serious consideration to a plan similar to that proposed by plaintiff-intervenors, whereby 20 attorneys, assisted by seven paralegals and seven secretaries, would operate three or four branch offices dispersed across the state. In effect, such a plan would amount to an expanded version of the Prison Project, an organization that has repeatedly proven its worth throughout the course of this litigation.
    5. The plan should provide for the continuation of defendant's law library and inmate law clerk program in order to enable prisoners to represent themselves should they desire to do so. This would operate to reduce the demands upon the attorney-assistance program inasmuch as many prisoners would undoubtedly seek advice only to assist them in preparing petitions on their own.

    *Hooks v. Wainwright,* 536 F.Supp. at 1352.

to require the State to establish such an office.

The plaintiffs appealed that issue and the Court of Appeals affirmed, saying that:

the State is under no constitutional duty to offer the inmates of its penal institutions both adequate legal research facilities and an independent attorney's office, however helpful the dual service may be.

538 F.2d at 544.

In its opinion, the United States Supreme Court noted that the district court had held the State was not constitutionally required to provide legal assistance as well as libraries, noted that the Court of Appeals affirmed that decision, and then affirmed without reservation. Justice Marshall's opinion recited the Court's precise holding:

We hold, therefore, that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.

430 U.S. at 828, 97 S.Ct. at 1498.

After detailing the value of lawyers and trained paralegals in a plan to meet the constitutional demands, the Court pointedly said: "Nevertheless, a legal access program need not include any particular element we have discussed...." *Id.* at 832, 97 S.Ct. at 1500. The Court then noted that although the district court had strongly suggested that it would prefer a plan providing trained legal advisors, the prison administrators had exercised their wide discretion within the bounds of constitutional requirements in choosing libraries, over the strong objections of the plaintiffs. *Id.* at 833, 97 S.Ct. at 1500–01. In so providing, it also pointed out that "while adequate law libraries are one constitutionally acceptable method to assure meaningful access to the courts, our decision ... does not foreclose alternative means to achieve that goal." *Id.* at 830, 97 S.Ct. at 1499. In this vein, it is noteworthy that *Bounds* refers to law libraries *or* other forms of legal assistance, in the disjunctive, no fewer than five times.

*See id.* at 825, 828–29, 97 S.Ct. at 1496–99.

Thus, the decision of the district court in this case is squarely contrary to the holding in *Bounds.* The argument that legal assistance is a necessary part of a state plan turns on what the Supreme Court meant by the "meaningful access" requirement: " '[M]eaningful access' to the courts is the touchstone.... [O]ur decisions have consistently required States to shoulder affirmative obligations to assure all prisoners *meaningful access* to the courts." *Id.* at 823–24, 97 S.Ct. at 1495–96 (emphasis added).

The district court here made extensive findings concerning the character of Florida's prison system and inmate population. Emphasizing the more than 50% rate of inmate functional illiteracy, the low level of inmate education, the lack of physical access to libraries due to the number of prisons left with incomplete or nonexistent law libraries under the proposed plan, geographical distribution of inmates, and the lack of library access for inmates in administrative confinement, the district court concluded that the Florida plan was inadequate to provide meaningful access to the courts. It held that no plan contemplating libraries alone could be sufficient due to inmate illiteracy. "[M]eaningful access to the courts on behalf of all of Florida's inmates can be realized only through a plan that incorporates the assistance of counsel, in some form." *Hooks v. Wainwright,* 536 F.Supp. at 1349. The problem with such a decision is that it reads too expansively the words used by the Supreme Court: "meaningful access." Although it may take more decisions to ascertain exactly what the Supreme Court will decide is constitutionally required to assure "meaningful access," we know from the *Bounds* holding that the Supreme Court does not presently interpret those words to require the mandatory provision of legal services.

This should end the case. Without *Bounds,* there is no articulated precedent in this Circuit creating the constitutional right upon which the district court bases its

decision. Although the district court relied to some extent on *Cruz v. Hauck,* 627 F.2d 710 (5th Cir.1980), *Cruz* merely discussed alternatives including assistance of counsel. It did not go beyond the *Bounds* requirement: "As stated in *Bounds,* access to the courts may be provided in whatever manner the state desires." *Id.* at 721.

The district court seemed to justify its divergence from the holding in *Bounds* by noting that it

> was decided on summary judgment, without the benefit of an evidentiary hearing. To the contrary, the factual record in the instant case has been fully developed over more than 11 years of hard-fought litigation that has included three evidentiary hearings and numerous status hearings. It is embodied in boxes burgeoning with court files, transcripts and evidentiary exhibits.

536 F.Supp. at 1340–41.

This reasoning is deficient for at least two reasons. *First,* it fails to acknowledge that the plaintiffs were arguing that a much broader meaning be given to the term "meaningful access" than found in the Supreme Court opinion. *Second,* the district court overlooked the fact that much of what it learned at the evidentiary hearings, and upon which it based its divergence from *Bounds,* must have been known to the Supreme Court at the time *Bounds* was decided.

That books would be of no use to the illiterate needs no discussion. *Bounds* surely did not hold that libraries must be provided to illiterate prisoners. That inmate writ-writers or nonlawyer law clerks cannot provide the same assistance as lawyers, is obvious. That volunteer and legal aid lawyers, to whose services the prisoners have no right of access, do not fulfill the same function as a state-paid legal office, which must serve every prisoner on request, would also not seem to require evidence. It presses credulity to contend that the Supreme Court in *Bounds* intended there would be a constitutional right to legal counsel, if it were found that some prisoners were illiterate and that nonlaw-

yer prisoners could not use the libraries as well as lawyers.

*Bounds* was a limited decision. At the time it was decided, *Bounds* was the culmination of a series of cases holding that imprisonment should not deprive persons of access to courts. *Ex Parte Hull,* 312 U.S. 546, 549, 61 S.Ct. 640, 641–42, 85 L.Ed. 1034 (1941) struck down a regulation prohibiting the filing of habeas corpus petitions absent determination by a parole board's "legal investigator" that they were "properly drawn." *Griffin v. Illinois,* 351 U.S. 12, 16–20, 76 S.Ct. 585, 589–91, 100 L.Ed. 891 (1956) held that, where needed, trial records must be provided to inmates unable to buy them. *Burns v. Ohio,* 360 U.S. 252, 257–58, 79 S.Ct. 1164, 1168–69, 3 L.Ed.2d 1209 (1959) required that indigent prisoners be permitted to file appeals and habeas corpus petitions without payment of docket fees. *Johnson v. Avery,* 393 U.S. 483, 490, 89 S.Ct. 747, 751, 21 L.Ed.2d 718 (1969) struck down prison regulations prohibiting inmates from assisting one another with habeas corpus petitions. *Younger v. Gilmore,* 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971) affirmed a three-judge district court opinion invalidating California prison regulations restricting prisoners' access to books and libraries. *Wolff v. McDonnell,* 418 U.S. 539, 578–80, 94 S.Ct. 2963, 2985–87 (1974) extended *Johnson v. Avery* to inmate civil rights actions as well as habeas corpus petitions. *Bounds* stated that: "It is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them and with stamps to mail them." 430 U.S. at 824–25, 97 S.Ct. at 1496–97.

All of these decisions simply removed barriers to court access that imprisonment or indigency erected. They in effect tended to place prisoners in the same position as non-prisoners and indigent prisoners in the same position as non-indigent prisoners. Having held that inmates can represent themselves, if able to do so, and can help other inmates who are not so able, it was but a small step to hold that such able inmates, who presumably would have ac-

cess to libraries but for imprisonment, must be given access to libraries in prison, or access to people who have access to libraries. This is a far cry from constitutionally requiring the state to provide legal counsel for the imprisoned, not available as a matter of constitutional right to the unimprisoned in civil cases.

The district court was commendably compassionate for the plight of prisoners and their difficulty in getting proper legal help. But prisoners are not alone in that situation. Vast numbers of the unimprisoned, both convicted and unconvicted, can make a similar case for the need of legal counsel, but to date no constitutional obligation of the state to provide that help has been articulated. There is no indication that *Bounds* intended to take that giant step.

Other circuits have recognized that *Bounds* merely recommended attorneys, and did not require them as a matter of constitutional law. In *Cepulonis v. Fair*, 732 F.2d 1, 6 (1st Cir.1984) the First Circuit vacated a portion of the district court order requiring that the State provide at least five hours a week of assistance to inmates by law students working under a lawyer's supervision.

Since its decision in *Bounds*, the Fourth Circuit has continued to reject an argument that meaningful access requires lawyers, stating:

> Harrington urges that ... the only way that the State constitutionally can afford library access to its inmates is by employing the services of a legal services plan.... We cannot agree with that the-

sis, ... but note, as did the Supreme Court in *Bounds*, that providing the assistance of trained lawyers in conjunction with physical library facilities is one way to assure constitutionally acceptable access to libraries by inmates.

*Harrington v. Holshouser*, 741 F.2d 66, 70 (4th Cir.1984). District courts have reached a variety of conclusions as to whether, in certain circumstances, *Bounds* requires some form of legal assistance in addition to libraries to furnish inmates with meaningful access to the courts.[2] To the extent these courts read *Bounds* to suggest that the states must be constitutionally required to provide attorneys in order to furnish inmates with meaningful access to the courts, they misinterpret that opinion.

■ That state prisoners are not constitutionally entitled to have the state provide attorneys for them is most visibly manifested in the practice of both state and federal judicial systems that treat the application for appointed counsel for collateral and civil rights proceedings on a case-by-case basis. State criminal defendants have a Fourteenth Amendment right to effective assistance of counsel at trial and on appeal. *Gideon v. Wainwright*, 372 U.S. 335, 344–45, 83 S.Ct. 792, 796–97, 9 L.Ed.2d 799 (1963); *Evitts v. Lucey*, — U.S. —, 105 S.Ct. 830, 836, 841, 83 L.Ed.2d 821, 830, 836 (1985); *Douglas v. California*, 372 U.S. 353, 357, 83 S.Ct. 814, 816–17, 9 L.Ed.2d 811 (1963). In *Ross v. Moffitt*, 417 U.S. 600, 619, 94 S.Ct. 2437, 2448, 41 L.Ed.2d 341 (1974), decided shortly before

**2.** *See Smith v. Bounds*, 610 F.Supp. 597, 606 (E.D.N.C.1985) (requiring State to provide assistance of counsel in some form due to its inability or unwillingness to implement its libraries plan); *Cody v. Hillard*, 599 F.Supp. 1025, 1060–61 (D.S.D.1984) ("Inmates ... must be afforded a reasonable form of law-trained assistance in the use of the library in order to give effect to the United States Supreme Court mandate in *Bounds*."); *Kendrick v. Bland*, 586 F.Supp. 1536, 1552, 1555 (W.D.Ky.1984) (where library inadequate and inmate legal aides insufficiently trained, court required that inmates be afforded with reasonable opportunity for confidential communication with persons trained in the law); *Canterino v. Wilson*, 562 F.Supp. 106, 111, 115 (W.D.Ky.1983) (where law libraries

and insufficiently trained inmate writ-writers were found not to provide meaningful access, court required plan which "specifically provide[d] for identification of either paid or volunteer attorneys or paralegal advisors within the meaning of *Bounds v. Smith* ...", and orders relating to the female prisoners' access were based upon the Equal Protection Clause as well as *Bounds* ); *Glover v. Johnson*, 478 F.Supp. 1075, 1096, 1103 (E.D.Mich.1979) (in equal protection challenge concerned with affording female and male inmates same access, "[d]efendants position that they are obligated only to provide *either* an adequate law library *or* qualified legal assistance is too narrow a reading of *Bounds*") (emphasis in original).

*Bounds*, the Supreme Court refused to extend that right to persons seeking discretionary appellate review.

■ Similarly, there is no automatic constitutional right to representation in a federal habeas corpus proceeding. *Johnson v. Avery*, 393 U.S. at 488, 89 S.Ct. at 750 acknowledged this:

> It has not been held that there is any general obligation of the courts, state or federal, to appoint counsel for prisoners who indicate, without more, that they wish to seek post-conviction relief.

*See also* C. Wright, A. Miller & E. Cooper, 17 *Federal Practice and Procedure* § 4268 at 712 (1978). This Circuit has recognized on a case-by-case evaluation that for certain individuals due process or the "interests of justice" may require the appointment of a lawyer. 18 U.S.C.A. § 3006A(g); *Schultz v. Wainwright*, 701 F.2d 900, 901 (11th Cir.1983); *Norris v. Wainwright*, 588 F.2d 130, 133 (5th Cir.), *cert. denied*, 444 U.S. 846, 100 S.Ct. 93, 62 L.Ed.2d 60 (1979). Even in those cases, however, there is no defined right to appointment at state expense.

The courts have also consistently held there is no constitutional right to the appointment of an attorney to represent an indigent person in a civil rights action. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir.1981); *Randall v. Wyrick*, 642 F.2d 304, 307 n. 6 (8th Cir.1981); *Hardwick v. Ault*, 517 F.2d 295, 298 (5th Cir.1975).

If an individual prisoner is not constitutionally entitled to an attorney, even after filing a complaint in court, there is no rational basis upon which to decide that all prisoners are entitled to counsel for the purpose of considering, filing and pursuing similar claims.

We adopt here the admonishment of the Supreme Court in *Ross v. Moffitt*, 417 U.S. 600, 618, 94 S.Ct. 2437, 2447–48, 41 L.Ed.2d 341 (1974):

> We do not mean by this opinion to in any way discourage those States which have, as a matter of legislative choice, made counsel available to convicted defendants at all stages of judicial review. Some States which might well choose to do so as a matter of legislative policy may conceivably find that other claims for public funds within or without the criminal justice system preclude the implementation of such a policy at the present time. North Carolina, for example, while it does not provide counsel to indigent defendants seeking discretionary review on appeal, does provide counsel for indigent prisoners in several situations where such appointments are not required by any constitutional decision of this Court (footnote omitted). Our reading of the Fourteenth Amendment leaves these choices to the State. . . .

Programs offering legal assistance, as *Bounds* pointed out, 430 U.S. at 831, 97 S.Ct. at 1499–50, may have a number of advantages, not only to inmates, but also to the states and correctional facilities. The plight of the illiterate, marginally literate, and uneducated prisoner in pursuing judicial remedies by habeas corpus petition and civil rights suit is well recognized. Both the majority and the dissenting opinions in *Bounds v. Smith* recognized that a lawyer would be able to draft and file such papers more efficiently and effectively than a non-lawyer.

It is a good idea to obtain public support for legal assistance for prisoners. The Florida legislature recently created the office of "capital collateral representative," which will furnish state-paid attorneys to represent indigent death row inmates in collateral proceedings in state and federal courts. Act of June 24, 1985, ch. 85–332, 1985 Fla.Sess.Law Serv. 451 (West) (to be codified at Fla.Stat.Ann. § 27.701–08). But all good ideas are not constitutionally required. We hold the district court erred in requiring that *any* Florida library plan, devised to ensure constitutional access to the courts by state inmates, must include a provision for attorney assistance. The decision of the district court is REVERSED and the case REMANDED for further proceedings consistent with this decision.

REVERSED and REMANDED.

## HOOKS APPENDIX

A great deal of litigation in this case preceded the Supreme Court decision in *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The suit was started in November 1970 as a result of a handwritten civil rights complaint filed by plaintiff Harold Raymond Hooks, an indigent inmate of Avon Park Correctional Institution, Avon Park, Florida. Hooks alleged that a five-dollar fee charged by the Clerk of the Florida Supreme Court prior to sending a requested court opinion operated to deny indigent prisoners their right of access to the courts. Hooks subsequently filed a second complaint seeking to compel defendant Wainwright to provide him with access to a law library and a typewriter. After requiring the State to respond to the issues raised by Hooks' complaint, the court dismissed the action on July 23, 1971.

Hooks appealed. The Fifth Circuit vacated the order and remanded the case for reconsideration in light of the Supreme Court's decision in *Younger v. Gilmore,* 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971). *Hooks v. Wainwright,* 457 F.2d 502 (5th Cir.1972). After an evidentiary hearing, the district court entered an order on December 6, 1972, finding that the Florida Department of Corrections did not provide indigent inmates with the assistance of counsel and that the legal materials made available to such inmates were inadequate to enable them to meaningfully pursue avenues of post-conviction relief. The court directed the parties, including the United States as *amicus curiae,* to submit proposed plans for meeting the constitutional requirements, with the following issues:

1. The extent of professional or quasi-professional services which would be provided indigent inmates.
   \*   \*   \*   \*   \*   \*

2. The extent of the law libraries which would be provided indigent inmates.
   \*   \*   \*   \*   \*   \*

3. The time frame within which implementation can be perfected.

In this December 6, 1972 order the district court indicated that law libraries alone might be insufficient to guarantee access to the courts for all indigent prisoners. The plans submitted by the State provided libraries only, while the plans filed by plaintiffs and each of four *amicus curiae* included both law libraries and professional assistance. On August 21, 1973, the district court conducted an evidentiary hearing on the parties' proposed implementation plans and then took the matter under advisement.

The case lay dormant until December 29, 1975, when three inmates, represented by Florida Institutional Legal Services, Inc., filed a motion for leave to intervene. They claimed the State had failed to take any action pursuant to the December 6, 1972 order. The court granted permission to intervene by order on July 7, 1977. On September 6, 1977, plaintiff-intervenors sought a preliminary injunction compelling the State to continue funding the Prison Project, a nonprofit corporation organized in 1973 which provided a variety of legal services to indigent inmates in certain Florida prisons. The Prison Project eventually evolved into Florida Institutional Legal Services, Inc., which represents plaintiff-intervenors in this litigation. *See generally Hooks v. Wainwright,* 536 F.Supp. 1330, 1334–35 & 1334 n. 9 (M.D.Fla.1982).

Defendants responded by affidavit which stated that the State had begun establishing a law library system in Florida's prisons. The plan contemplated setting up relatively complete libraries at seven of the State's major institutions and smaller libraries at each of the twenty remaining major institutions. Because no libraries were to be furnished at the State's road prisons and community correctional centers, inmates there desiring to do legal research could either borrow materials or request a transfer to a prison with a library. The State's plan was an attempt to conform with the then-recent decision in *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), in which the Supreme Court determined that the fundamental right of access to courts required states to provide inmates with adequate law libraries or adequate assistance from

persons trained in the law. *Id.* at 828, 97 S.Ct. at 1498.

On October 6, 1977, the district court granted the plaintiff-intervenors' application for preliminary injunctive relief. After considering the State's proposed law library plan and expressing doubts as to its sufficiency, the district court preliminarily enjoined the State from permitting termination of the Prison Project until final approval of a plan that would meet the State's constitutional duty. The Fifth Circuit affirmed the district court's order granting the preliminary injunction, *Hooks v. Wainwright,* 578 F.2d 1102, 1103 (5th Cir.1978), which remains in effect. *See Hooks v. Wainwright,* 536 F.Supp. at 1355.

The district court conducted an evidentiary hearing in July 1978 and again took the matter under advisement. For the next three years, the district court held status conferences and encouraged the parties to reach an appropriate settlement. During this period, the Florida Legislature considered enabling legislation that would have sanctioned a proposed plan under which state public defenders would have assisted indigent inmates in post-conviction and parole revocation proceedings and in actions challenging conditions of confinement. After the legislation died in committee in 1981, the parties concluded that further settlement negotiations were futile and requested the district court to enter an appealable order concerning the question of whether the assistance of attorneys, in some form, was an essential ingredient of Florida's attempt to comply with the mandate of *Bounds v. Smith* that inmates be afforded meaningful access to the courts.