Mary GLOVER, Lynda Gates; Jimmie Ann Brown; Manette Gant; Jacalyn M. Settles; and several Jane Does, on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,

v.

Perry JOHNSON, Director, Michigan Department of Corrections; Florence R. Crane; G. Robert Cotton; Thomas K. Eardley, Jr.; B. James George, Jr.; Duane L. Waters; The Michigan Corrections Commission; William Kime, Director, Bureau of Programs; Robert Brown, Jr., Director, Bureau of Correctional Facilities; Frank Beetham, Director, Bureau of Prison Industries; Richard Nelson, Director, Bureau of Filed Services; Gloria Richardson, Superintendent, Huron Valley Women's Facility; Dorothy Costen, Director of Treatment, Huron Valley Women's Facility; Clyde Graven, Sheriff, Kalamazoo County, individually, and in their official capacities, Defendants–Appellants.

No. 94–1617.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 14, 1995.

Decided Feb. 14, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied March 27, 1996.

Michael Barnhart, Barnhart & Mirer, Detroit, MI, Barbara L. Kessler, Ann Arbor, Deborah A. LaBelle (argued and briefed), Law Offices of Deborah LaBelle, Detroit, MI, for Mary Glover.

Michael Barnhart, Barnhart & Mirer, Detroit, MI, Deborah A. LaBelle (argued and briefed), Law Offices of Deborah LaBelle, Detroit, MI, for Lynda Gates and Jimmie Ann Brown.

Michael Barnhart, Barnhart & Mirer, Detroit, MI, for Manette Gant, Jacalyn M. Settles and Jane Does.

Nechama Masliansky (briefed), National Center on Women and Family Law, Detroit, MI, Anne L. Argiroff (briefed), Michigan Legal Services, Detroit, MI, for National Center on Women and Family Law.

Julie Kunce Field, Lansing, MI, Anne L. Argiroff, Michigan Legal Services, Detroit, MI, for Woman Lawyers Association of Michigan.

David G. Edick, Asst. Atty. Gen., Office of the Attorney General, Corrections Div., Lansing, MI, Kim G. Harris (argued and briefed), Michigan Dept. of Attorney General, Corrections Div., Lansing, MI, for Clyde Graven and G. Robert Cotton.

David G. Edick, Asst. Atty. Gen., Office of the Attorney General, Corrections Div., Lansing, MI, for all other Defendants–Appellants.

Before: WELLFORD, NELSON, and SUHRHEINRICH, Circuit Judges.

WELLFORD, Circuit Judge.

Nearly twenty years ago, a group of female prisoners in the Michigan state system filed this class action claiming that they were denied access to the courts and constitutional equal protection rights. Those plaintiffs "demanded that defendants and others, members of the Michigan Corrections Commission ('Commission'), provide them with educational and vocational opportunities comparable to those provided male inmates." *Glover v. Johnson*, 721 F.Supp. 808, 811 (E.D.Mich.1989).[1] After a bench trial, District Judge Feikens found that "the educational opportunities available to the Department's women prisoners were substantially inferior to those available to the Department's male prisoners." *Id.* Consequently, Judge Feikens entered an order setting forth a general remedial plan to provide higher education and vocational training for female prisoners.[2]

Over the course of several years, the district court has supervised the implementation of the remedial plan and has necessarily entered a panoply of orders intended to address particular issues. Specifically, in August, 1991, the court ordered the defendants to "contract with Prison Legal Services ["PLS"] forthwith to provide on-site services at all facilities and camps housing women prisoners." In accordance with that order, the defendants continued through 1993 to contract with PLS, as it had since 1979, to provide legal services to the plaintiffs in areas including "child custody disputes/neglect actions." In a letter to the district court dated November 2, 1993, however, the defendants declared that they would discontinue funding for such services because it would be improper "to continue using state funds to provide child custody assistance to offenders when law-abiding Michiganders have no right to [free] state assistance for such services."

The plaintiffs filed a motion to enjoin the defendants from discontinuing the child custody assistance, claiming that such an action would violate the court's August, 1991 order. The district court granted the plaintiffs' motion, finding the defendants in contempt and enjoining them from "unilaterally changing or modifying in any way the staffing of PLS and the areas in which PLS provides services to women inmates absent a motion to modify or to seek leave of this court." The court added that "staffing levels and areas of assistance must comply with orders and terms provided in the 1992 contract." Furthermore, the district court found that the plaintiff class was entitled under the due process clause of the Constitution to a "right to legal assistance in parental rights matters." The defendants filed this timely appeal.

The defendants first argue that the district court erred in holding them in contempt for violating a previous court order. This court reviews a finding of contempt under an abuse of discretion standard. *Glover v. Johnson*, 934 F.2d 703 (6th Cir.1991); *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 590 (6th Cir.1987). This court has stated in a previous proceeding in this case that "[i]n a civil contempt proceeding, the petitioner must prove by clear and convincing evidence that the respondent violated the court's prior order." *Glover*, 934 F.2d at 707. The district court below found the defendants in contempt based on a combination of the August, 1991 order, the subsequent contracts between the state and PLS, and the "custom and practice" of providing the requested service that had been followed throughout the case.

---

1. The history of this case, which has consumed very considerable time and resources of the district court, the legal attention of the Michigan Attorney General's office, and extensive (and expensive) services of dedicated attorneys for the plaintiff class, is set out in *Glover v. Johnson*, 721 F.Supp. 808 (E.D.Mich.1989).

2. See also *Glover v. Johnson*, 510 F.Supp. 1019 (E.D.Mich.1981) (*"Glover II"*), regarding additional requirements with respect to other remedies afforded female prisoners.

■ We find no order, however, mandating that the defendants pay for PLS to provide services in family law/child custody matters. The only applicable order of the district court (the August, 1991 Order) requires the state to "contract ... to provide on-site services" at the prison facility. The plaintiff class merely argues that the court required such assistance *implicitly* in the prior orders of the court. On the contrary, we do not find any evidence that the court ever required that the state fund legal assistance in any particular area of the law, as the plaintiffs contend. Therefore, in the absence of any violated order of the court, we would find that the district court abused its discretion in finding the defendants in contempt.

■ The defendants also contend that the district court erred, as a matter of law, in finding that the Constitution requires them to provide legal assistance to plaintiffs in parental rights/child custody matters to ensure their meaningful access to the courts.[3] This court has addressed the "access to court" right, but did not limit the analysis to male or female prisoners, in *Knop v. Johnson,* 977 F.2d 996 (6th Cir.1992), *cert. denied sub nom. Knop v. McGinnis,* 507 U.S. 973, 113 S.Ct. 1415, 122 L.Ed.2d 786 (1993). This court quoted from *Bounds v. Smith* in defining the right to access:

> [T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries *or* adequate assistance from persons trained in the law.

*Knop,* 977 F.2d at 1003 (quoting *Bounds v. Smith,* 430 U.S. 817, 825, 97 S.Ct. 1491, 1496–97, 52 L.Ed.2d 72 (1977)). We emphasized that "*Bounds* refers to law libraries *or* other forms of legal assistance, in the disjunctive,

no fewer than five times." *Id.* at 1003 (quoting *Hooks v. Wainwright,* 775 F.2d 1433, 1435 (11th Cir.1985), *cert. denied,* 479 U.S. 913, 107 S.Ct. 313, 93 L.Ed.2d 287 (1986)).

In *Knop,* this court held that Michigan was not constitutionally required to provide legal assistance to help prisoners prepare their own civil lawsuits. *Id.* at 1005. We added:

> It may well be a good idea for Michigan to provide lawyers for prisoners who want to bring lawsuits of their own. Federal judges, however, should be ever mindful of the obvious fact that not all good ideas are mandated by the Constitution. *Hooks v. Wainwright,* 775 F.2d 1433, 1438 (11th Cir. 1985), *cert. denied,* 479 U.S. 913, 107 S.Ct. 313, 93 L.Ed.2d 287 (1986). As Justice O'Connor succinctly put in her concurring opinion in *Murray v. Giarratano,* 492 U.S. 1, 13, 109 S.Ct. 2765, 2772, 106 L.Ed.2d 1 (1989), "[b]eyond the requirements of *Bounds,* the matter is one of *legislative* choice based on difficult policy considerations and the allocation of scarce legal resources." (Emphasis supplied.)

In our constitutional democracy, as we understand it, *legislative* choices are to be made by legislators who are subject to removal by the people, and not by judges who enjoy office for life. See *San Antonio Ind. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 31, 93 S.Ct. 1278, 1295, 36 L.Ed.2d 16 (1973) (courts lack both authority and competence to assume a legislative role); *cf. Kelley v. Metropolitan Co. Bd. of Educ.,* 836 F.2d 986, 996 (6th Cir.1987), *cert. denied,* 487 U.S. 1206, 108 S.Ct. 2848, 101 L.Ed.2d 885 (1988). A "'mother knows best' approach should play no part in traditional constitutional adjudication." *Murray v. Giarratano,* 492 U.S. 1, 11, 109 S.Ct.

---

**3.** In 1989, the plaintiffs first argued for the expansion of the role of legal assistance to ensure access to courts in a brief in support of enforcement of a district court order. They claimed in that brief that there was "no recourse for representation on child custody and domestic law issues," and that "[l]ack of representation in these and other legal areas" could impact adversely upon female prisoners. However, they did not contend that this representation amount-

ed to a constitutional right, or that men prisoners receive similar legal services. This request for services was apparently based upon a contention of Prison Legal Services that assistance in "general civil matters" (a prisoner cut off from a child without a fair hearing) reduces frustration and bitterness. *See* a letter to State Representative Carolyn Kilpatrick, dated November 18, 1987.

2765, 2771, 106 L.Ed.2d 1 (1989) (Plurality opinion of Rehnquist, C.J.).

*Id.*

■ While *Knop* was concerned with prisoners who desired legal assistance and access in civil suits as plaintiffs, we believe the principles expressed apply equally to child custody, family law, and domestic cases whether the prisoner be a plaintiff or a defendant. *Knop* concluded that mandated legal assistance should be confined to habeas corpus proceedings and "civil rights actions involving *constitutional* claims." *Id.* at 1009 (emphasis added). Further affirmative legal assistance amounts to "an unwarranted extension of the right of access." *Id.*

At oral argument and in their brief, plaintiffs cite only *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), as supporting their claim that they are entitled to free legal representation in civil, custody, and domestic cases. *Mathews* involved claimants to social security disability benefits; it did not involve claims for free legal services. Neither was *Mathews* concerned with suits of prisoners in state custody. Further, *Mathews* pertains to "government entitlements" and to the "administrative decisionmaking process" set up to determine eligibility of an "entitlement" claimant. *Mathews,* 424 U.S. at 341, 96 S.Ct. at 905–06. We do not consider *Mathews* relevant to the issues in this case; there is no denial here of any "entitlement" nor is there a wrongful discontinuance of a *constitutional* or statutory benefit. We are not called upon in this case to determine to what extent a parent-child relationship is a "fundamental right," as argued by plaintiffs, nor do we decide whether "parental rights" are to be treated in a different fashion than other civil rights. The civil courts that decide legal questions in which state prisoners are interested are the proper tribunals to decide due process and legal representation questions.

■ As previously noted, the district court has found that the HVWF law library meets constitutional standards. With regard to female prisoners in this facility who are not illiterate, not unable to understand English, this furnishing of a sufficient library with an adequate staff satisfies *Bounds v. Smith* standards.[4] "'Access to the courts' ... encompasses all the means a defendant ... might require to get a fair hearing from the judiciary on all charges brought against him or grievances alleged by him." *Gilmore v. Lynch,* 319 F.Supp. 105, 110 (N.D.Cal.1970), *aff'd sub nom. Younger v. Gilmore,* 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971) (per curiam). The Constitution does not require special legal help from the state in cases involving "parental rights" as asserted by plaintiffs.

■ We also decline plaintiffs' invitation to reach a legal conclusion that the needs of women prisoners are greater than those of male prisoners in the child custody area, and that, therefore, plaintiffs deserve more legal representation than males. That female inmates may have a greater claimed "need" for such legal assistance than male prisoners does not establish a basis for the asserted constitutional violation argued by them. We take judicial notice of the fact that courts within this circuit, absent extraordinary circumstances, do not appoint lawyers for indigent and pro se prisoners in civil rights cases and in prisoner grievance-type cases, whether the plaintiff prisoner is a male or a female. "Prisoners have no statutory right to counsel in civil rights cases. Instead, the appointment of counsel is within the court's discretion." Charles R. Richey, *Prisoner Litigation in the United States Courts* (1995), p. 75.

■ *Lassiter v. Department of Social Services,* 452 U.S. 18, 26, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981), a case upon which the district court relied, involved parental rights and a claim of constitutional entitlement to legal services. The Supreme Court stated:

> The pre-eminent generalization that emerges from this Court's precedents on an indigent's right to appointed counsel is that such a right has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation.

---

4. Prisoners who pose serious security risks, if permitted access to the library, may also require further assistance. *Bounds,* 430 U.S. at 828, 97 S.Ct. at 1498.

*Lassiter*, 452 U.S. at 25, 101 S.Ct. at 2158. The Court emphasized that counsel is required only when the party has an interest in his or her own "personal freedom." *Id.* Indeed, the Court pointed out in *Lassiter* that counsel is not constitutionally *required* for a prisoner in probation revocation proceedings; "the decision whether counsel should be appointed [is] to be made on a case-by-case basis." *Id.* at 26, 101 S.Ct. at 2159. An indigent, whether or not a prisoner, is entitled to counsel only "when, if he loses, he may be deprived of his *physical liberty.*" *Id.* at 27, 101 S.Ct. at 2159 (emphasis added). *Lassiter* seems to settle the issue here involved, and is cited by plaintiffs in their brief: "[T]he decision whether due process calls for the appointment of counsel for indigent parents in termination proceedings [is] to be answered in the first instance by the trial court, subject, of course, to appellate review. See, *e.g., Wood v. Georgia*, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220." *Lassiter*, 452 U.S. at 32, 101 S.Ct. at 2162.

■■■ Thus, as previously noted, it is for the state court judges to decide in parental right cases, even in *termination* cases, whether counsel is to be appointed for an indigent party in such proceedings. In *Lassiter*, the Supreme Court recognized no constitutional right to counsel in a parental rights case.[5] Indeed, it is one step further removed for plaintiffs here to insist that the state must provide specific legal assistance to Michigan *prisoners* involved in parental rights and child custody cases. This might well result in favoring female prisoners over those not in state custody by reason of their criminal conduct if we were to accept plaintiffs' argument.

In reaching our decision, we are mindful that incarcerated persons face disadvantages and hardships with respect to a variety of legal concerns and with the loss of a considerable degree of freedom and liberty while in prison. They necessarily surrender some privileges while incarcerated. We recognize also that prisoners' families, and especially their children, pay a heavy price when a parent or family member is imprisoned.

■■■ We conclude that defendants are not constitutionally required to provide plaintiffs free legal assistance in parental rights matters, but that such assistance is only required in post-conviction, habeas corpus, and civil rights matters involving the prisoner's custodial situation or constitutional claims personally involving the prisoner.[6] The conclusion expressed in *Knop*, which applied to male prisoners, certainly applies equally to female prisoners:

It might be a good idea for taxpayers of Michigan to provide legal assistance for prisoners in all civil matters as to which a need can be demonstrated, just as it might be a good idea for the taxpayers to provide such assistance for the populace at large. Again, however, we return to the obvious truth that not every good idea is mandated by the Constitution. And if the ordinary law-abiding Michigander has no constitutional right of access to the public purse for legal assistance on claims involving such things as domestic relations, personal injury, deportation, workers compensation, social security, detainer, wills and estates, and taxation, it does not seem to us that such a constitutional right springs into existence by virtue of the needy person's having been convicted of a crime and sentenced to prison.

*Knop*, 977 F.2d at 1009.

We, accordingly, **REVERSE** the district court's order finding that the defendants were in contempt of court and holding that the defendants were constitutionally required to continue furnishing legal assistance to plaintiffs in family law/child custody matters.

---

5. As expressed by the dissent in *Lassiter*: "The Court today denies an indigent mother the representation of counsel in a judicial proceeding initiated by the State of North Carolina to terminate her parental rights." *Lassiter*, 452 U.S. at 35, 101 S.Ct. at 2163. At the same time, the Court in *Lassiter* recognized that a majority of state courts in 1981 did provide "appointed counsel" in parental termination proceedings as well as dependency and neglect proceedings also. *Id.* at 34, 101 S.Ct. at 2163.

6. An adequate law library or paralegal help at women's facilities is included in this limited mandate.